UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM LUCAS, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16 CV 970 JMB |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before the Court, pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*. The Act authorizes judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff William Lucas's application for Disability Insurance Benefits. All matters are pending before the undersigned United States Magistrate Judge with consent of the parties, pursuant to 28 U.S.C. § 636(c). The matter is fully briefed, and for the reasons discussed below, the Commissioner's decision will be reversed and remanded.

## BACKGROUND & SUMMARY OF DECISION

In December 2012, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging that he became disabled beginning December 7, 2012. (Tr. 13)[2] The Commissioner initially denied Plaintiff's claims on August 8, 2013. (Id) Thereafter, Plaintiff

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, and pursuant to Fed. R. Civ. P. 25(d) Civil Procedure is substituted as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] "Tr." refers to the administrative record filed on behalf of the Commissioner.

requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 2, 2014. (Tr. at 13, 51) Plaintiff and Delores Gonzalez, an impartial Vocational Expert ("VE"), testified at the hearing. On March 26, 2015, the ALJ issued a decision concluding that Plaintiff was not disabled under the Act. (Tr. 13-21) The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner in this matter. (Tr. 1-4) Plaintiff filed the instant action on June 24, 2016. (ECF No. 1) Plaintiff has exhausted his administrative remedies and the matter is properly before this Court. Plaintiff has been represented throughout all relevant proceedings.

Although the ultimate issue before the Court is whether substantial evidence supports the Commissioner's decision, Plaintiff presents several specific and related issues for this Court's review: (1) whether, the ALJ erred in according only limited weight to the opinion of Plaintiff's treating psychiatrist, Dr. Kulsoom Junaid, M.D.; (2) whether the evidence supports the ALJ's conclusion that Plaintiff's symptoms are generally well controlled; (3) whether the ALJ's Residual Functional Capacity assessment adequately accounts for Plaintiff's obsessive compulsive disorder symptoms; and (4) whether the ALJ erred in her consideration of the opinion of State Agency psychologist Dr. Robert Cottone, Ph.D.

The ALJ's decision in this matter is generally thorough, thoughtful, organized and well-reasoned. On the basis of the existing record, however, the undersigned cannot say that the ALJ's decision accurately characterized Plaintiff's history and treatment for obsessive compulsive syndrome symptoms. This error does not reflect a harmless error. Hence, the matter must be remanded.

## **ADMINISTRATIVE RECORD**[3]

Plaintiff is currently 37 years old. In his Disability Report – Adult form, Plaintiff listed the following mental conditions that impaired his ability to work: (1) bi-polar disorder, (2) depression; (3) anxiety; and (4) obsessive compulsive disorder ("OCD"). (Tr. 190-96) In a third party Function Report – Adult, dated June 9, 2013, Plaintiff's mother listed numerous limitations regarding his ability to work. (Tr. 212-19) Plaintiff's mother indicated that his impairments affected the following abilities: lifting, completing tasks, concentration, and getting along with others. (Tr. 217) Prior to his alleged disability onset, Plaintiff worked for his father's asphalt business.

All of Plaintiff's relevant impairments are psychological /psychiatric in nature. The record before the Court indicates that Plaintiff received regular and consistent treatment for his symptoms from Dr. Kulsoom Junaid, M.D., from 2007 up to and beyond the date of the ALJ's decision in this matter. (Tr. 25-50, 241-302)[4] Dr. Junaid's treatment notes show consistent diagnoses of bipolar disorder and OCD, along with regular references to anxiety and depression-related symptoms. The treatment notes indicate that Plaintiff's OCD symptoms included fear of contamination (and repetitive handwashing) and checking rituals. Dr. Junaid's treatment notes show that he treated and attempted to treat Plaintiff's various symptoms with a variety of techniques and medications. Dr. Junaid made periodic adjustments and changes to Plaintiff's medications. Dr. Junaid's notes consistently indicate that Plaintiff was cooperative, logical,

---

[3] The Court has reviewed and considered the entire administrative record. Because this case is being remanded, that record is only briefly summarized herein. Specific aspects of the record are discussed in greater detail in the Court's analysis of the issues presented for review.

[4] The record indicates that, after he lost his insurance coverage, Plaintiff paid out-of-pocket for treatment with Dr. Junaid. Additionally, Plaintiff sought alternative, lower cost / free psychiatric services from Grace Hill Health Centers. (Tr. 316) It appears, however, that Plaintiff did not secure such services from Grace Hill.

appropriately dressed, did not suffer from psychosis, with his memory intact, but he also continued to suffer from a variety of psychological problems.  Likewise, Dr. Junaid's notes indicate that, although Plaintiff sometimes suffered side effects of his medications (e.g., drowsiness), he generally tolerated his medications well.  Importantly, however, beginning no later than January 2013, and continuing until at least March 2015, Dr. Junaid's notes often indicated that Plaintiff's OCD symptoms were treatment resistant, medication resistant, and/or difficult to control.  (Tr. 252, 253, 295, 297, 301, 345)

The record also includes two relevant opinions.  The first opinion is from Dr. Robert Cottone, Ph.D., which was part of a Disability Determination Explanation, dated August 8, 2013.  (Tr. 91-99)  Dr. Cottone did not examine Plaintiff but reviewed the medical records of Dr. Junaid available as of early June 2013.  Dr. Cottone concluded that Plaintiff suffered from both affective and anxiety-related disorders, including OCD.  Dr. Cottone completed a mental residual functional capacity assessment, with specific findings relative to Plaintiff's understanding and memory limitations, concentration and persistence limitations, social interaction limitations, and adaptation limitations.  Based on his findings, Dr. Cottone concluded that Plaintiff's illness "would be contained more adequately if he worked with decrease[d] interpersonal interaction and less complex work activity." (Tr. 97)  Dr. Cottone opined that Plaintiff should avoid work that involves intense or excessive interpersonal interactions, customer complaints, close proximity to co-workers, and public contact.  (Id.)  Dr. Cottone further opined that Plaintiff could understand, remember, and carry out simple tasks, make simple work-related adjustments, relate adequately to his co-workers and supervisors, and adjust to ordinary changes in his work routine or setting.  (Id.)

The second relevant opinion was submitted in a Mental Residual Functional Capacity Questionnaire prepared by Dr. Junaid, and dated November 20, 2014.  (Tr. 340-44)  Dr. Junaid

4

represented that he had been treating Plaintiff since 2007.  Dr. Junaid's noted that Plaintiff suffered from bipolar disorder and OCD.  Dr. Junaid reported that Plaintiff's response to treatment was only partial because Plaintiff's symptoms were treatment resistant.  Regarding Plaintiff's prognosis, Dr. Junaid again noted that Plaintiff suffered from treatment resistant symptoms, and had symptoms including anxiety, fatigue, obsessive intensive thoughts, social anxiety, checking rituals, and a preoccupation with contamination.   Dr. Junaid found Plaintiff either seriously limited (but not precluded) or unable to meet competitive standards in each of fifteen listed mental abilities and aptitudes needed to perform unskilled work.  Regarding these limitations, Dr. Junaid noted that Plaintiff's situation is complicated by the fact that he suffers from "severe & treatment resistant obsessive compulsive disorder."  (Tr. 342)  Finally, in commenting on why Plaintiff would have difficulty working on a full-time and sustained basis, Dr. Junaid again explained that Plaintiff's symptoms are treatment resistant.  Dr. Junaid further explained that Plaintiff had only a partial response to medication, had tried several different combinations of medications, and still only achieved a partial response or developed side-effects.

On December 2, 2014, the ALJ conducted a hearing on Plaintiff's applications.  (Tr.51-90)  Plaintiff appeared in person, with counsel.  The ALJ also received testimony from independent vocational expert ("VE") Dolores Gonzalez.

## **THE ALJ'S DECISION**

In assessing whether Plaintiff was disabled, the ALJ followed the required five-step process laid out in the Commissioner's regulations.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 7, 2012, his alleged onset date.  (Tr. 15)  At step two, the ALJ found that Plaintiff had severe impairments of obsessive compulsive disorder and bipolar disorder.  (Id.)  The ALJ found Plaintiff's history of back and neck pain to be nonsevere.

5

At step three, the ALJ found that none of Plaintiff's impairments—whether considered alone or in combination—met or equaled a listed impairment under either Listing 12.04 or Listing 12.06. (Tr. 15-17) The ALJ concluded that Plaintiff had mild restrictions in his activities of daily living, moderate difficulties in his social functioning, and mild difficulties with concentration, persistence or pace. The ALJ found Plaintiff had no episodes of decompensation of an extended duration. (Tr. 16)

Prior to completing step four, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to –

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to perform routine, repetitive tasks. The claimant is limited to low stress jobs (defined as occasional decision-making and occasional changes in the work setting). He is able to have occasional interaction with the public, co-workers, and supervisors.

(Tr. 17)

In making the relevant disability determinations, the ALJ also made an adverse finding regarding Plaintiff's credibility. The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. (Tr. 17) The ALJ also provided a summary of the medical evidence and opinion from Dr. Junaid, Dr. Cottone's opinion, and the third party statement of Plaintiff's mother.

At steps four and five, and based on the testimony of the VE, the ALJ concluded that, even though Plaintiff could not return to his past relevant work,[5] there existed other jobs that Plaintiff could still perform with his RFC. Those jobs included machine maker, routing clerk, and silver wrapper. (Tr. 20) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security. (Tr. 21)

---

[5] Although Plaintiff has a college degree, Plaintiff's past work was entirely in labor/construction; he worked in various aspects of his father's asphalt business.

6

## **ANALYSIS AND DISCUSSION**

**I.      Summary of Issues Presented for Review**

Plaintiff contends that the ALJ made several specific errors.  First, Plaintiff argues, in substance, that the ALJ erred in weighing the opinion of his treating psychiatrist, Dr. Junaid.  Plaintiff contends that the ALJ ignored or mischaracterized Dr. Junaid's treatment notes, placed too much emphasis on Plaintiff's activities of daily living, and did not adequately address the side effects of Plaintiff's medications.  Second, and relatedly, Plaintiff contends that the record does not support the ALJ's conclusion that Dr. Junaid's treatment notes show that his symptoms are generally well controlled.  Third, Plaintiff argues that the RFC did not include limitations sufficient to address Plaintiff's OCD.  Finally, Plaintiff argues that Dr. Cottone's opinion is not consistent with the ALJ's conclusions.

The Commissioner contends, inter alia, that Plaintiff relies too heavily on treatment notes from visits occurring after the ALJ's decision, and that the ALJ only found that Plaintiff's symptoms were manageable.

**II.     Standard of Review and Analytical Framework**

To be eligible for SSI or DIB benefits, a claimant must prove that she is disabled within the meaning of the Act.  See Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A).  A claimant will be found to have a disability "only if [her] physical or mental impairment or impairments are of such severity that

7

[she] is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B). See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled. "During this process the ALJ must determine: '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'" Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends." Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)). See also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eighth Circuit has emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an

8

examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The claimant's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the claimant's impairments.
6. The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (citation omitted).

A reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). Similarly, if the record supports inconsistent conclusions, and the ALJ's decision reflects one of those conclusions, then a reviewing court must affirm the decision. See McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

### III. Analysis

As explained below, the ALJ's treatment of Dr. Junaid's opinion rests in part on what appears to be an erroneous analysis of the medical evidence. This error could very well impact the weight given to Dr. Junaid's opinion and Plaintiff's RFC.

9

The ALJ gave "limited weight" to Dr. Junaid's opinion for several reasons. In in explaining her reasons, the ALJ noted that, "[u]nder 'prognosis,' Dr. Junaid suggests 'treatment resistant symptoms' despite treatment notes indicating good response. Overall, Dr. Junaid's opinion bears little resemblance to his treatment notes." (Tr. 19) The undersigned has reviewed each of Dr. Junaid's treatment notes and does not believe that the record as a whole supports the ALJ's conclusion in this regard.[6]

One somewhat unique aspect of this matter is that Plaintiff received regular and consistent treatment from the same provider—Dr. Junaid—over the course of seven or eight years. The medical record shows that Dr. Junaid consistently diagnosed Plaintiff with bipolar disorder and OCD. Starting at least in 2013 and continuing until 2015, Dr. Junaid also regularly noted that Plaintiff's OCD was persistent, severe, and/or resistant to treatment and medication. (See, e.g., Tr. at 252, 253, 295, 297, 301, 345) There is nothing in the record to suggest that Plaintiff is malingering. To the contrary, the record shows Plaintiff's consistent and persistent efforts to seek psychological assistance, including routine medication management and adjustments. Thus, the record does not support the ALJ's conclusion that Dr. Junaid's opinion bears little similarity to his treatment notes as to the treatment resistant nature of Plaintiff's OCD symptoms.

This issue with the ALJ's decision cannot easily be dismissed as harmless error or as an error in opinion writing. Plaintiff contends that the RFC articulated by the ALJ does not adequately account for his OCD symptoms. During the administrative hearing, the VE testified that it would be unacceptable if a prospective worker had to take two or three extra breaks per

---

[6] The ALJ also notes that Dr. Junaid's "treatment records indicate no side effects" from Plaintiff's medications. (Tr. 19) This characterization of the record may be too broad. Dr. Junaid's notes show that he adjusted and modified Plaintiff's medications, and his treatment notes discuss timing of medications to avoid drowsiness and the like. So, it is not entirely accurate to say the treatment records indicate no side effects of the medications.

day to wash their hands, but it would not be a problem if the worker could use hand sanitizer instead. (Tr. 86-87) Thus, it is important to allow the ALJ to fully consider and explain how the treatment resistant nature of Plaintiff's OCD would, if at all, alter Plaintiff's RFC. If Plaintiff would require several additional breaks to wash his hands, he could be precluded from competitive employment.

Because the weight assigned to Dr. Junaid's opinion might change upon considering the treatment resistant nature of Plaintiff's OCD symptoms, the undersigned does not believe it would be prudent to address any other issues raised by Plaintiff herein.

## **CONCLUSION**

For the reasons stated above, the Court cannot say that the Commissioner's decision is supported by substantial evidence on the record as a whole. The matter must be remanded to allow the Commissioner to reconsider the weight to be accorded to Dr. Junaid's opinion with proper consideration of the medical evidence indicating that Plaintiff suffered from treatment resistant OCD symptoms. This reconsideration could impact several issues on remand, including Plaintiff's credibility and RFC, among others.

Accordingly,

**IT IS HEARBY ORDERED** that, the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum and Order.

A separate Judgment shall be entered this day.

 /s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
United States Magistrate Judge

Dated this  18th   day of   July  , 2017.

11